IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

ADVANCED UNDERGROUND
INSPECTION, LLC,

        Debtor.

Case No. 18-46416
Chapter 11
Hon. Thomas J. Tucker

**DEBTOR'S FIRST DAY MOTION FOR AUTHORIZATION (A) TO PAY PRE-PETITION WAGES, SALARIES, BENEFITS, AND REIMBURSABLE EXPENSES, AND TO CONTINUE EXISTING EMPLOYEE POLICIES, AND (B) TO CONTINUE IN EFFECT WORKERS' COMPENSATION PROGRAMS**

Advanced Underground Inspection, LLC, as Debtor and Debtor-in-Possession ("Advanced Underground" or "Debtor"), by its proposed attorneys, Strobl & Sharp, P.C., moves for authorization, pursuant to 11 U.S.C. §§ 105(a), 363(b), 365(b) and 507(a)(3) and (a)(4), to pay pre-petition wages, salaries, commissions, benefits, reimbursable expenses, medical and such other benefits, to continue its workers' compensation, liability and property insurance policies and existing employee policies, in support thereof, represent the following:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a "core" proceeding pursuant to 28 U.S.C. §§ 157(b) (2) (A) and (M). The predicates for relief sought herein are §§ 105(a), 363(b), 365(b) and 507(a) (3) and (a) (4) of Title 11, United States Bankruptcy Code (the "Code").

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. On May 1, 2018, (the "Petition Date"), the Debtor filed with this Court its voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Code"). Pursuant to §§1107 and 1108 of the Bankruptcy Code. Debtor is continuing to operate its business and manage its properties and assets as a debtor-in-possession.

4. Advanced Underground is a single member limited liability company organized in the State of Michigan on August 8, 2001, by Jeana L. Garcia Moir and is currently in good standing under the laws of the State of Michigan. The Company has minority certification.

5. Advanced Underground was initially formed to provide storm and sanitary line video inspections to industrial and municipal customers. Today, the Company provides a full range of services, including sewer cleaning, catch basin and manhole cleaning, grouting, air testing, pipe and manhole rehabilitation and site restoration as well as ancillary services related to storm and sewer systems for pump stations and waste water treatment plants, including sludge removal, water blasting, disposal services and hydro-excavating. The Company is the leading provider of underground infrastructure services to industrial, municipalities and state agencies throughout the mid-west.

6. The Debtor currently employs a labor force of thirty-two (32) individuals, including its management, sales, engineering, administrative and field staff (collectively, the "Employees"). In addition, the Company utilizes the services of one commissioned sales representative who is paid on a contract basis.

7. The Debtor operates its principal business location in Westland, Michigan, and maintains locations in Maryland and Pennsylvania in order to service out-of-state customers.

## POST-PETITION FINANCING

8. The Debtor has not requested approval of post-petition financing and has entered into an adequate protection agreement with its prepetition secured creditors allowing for the use of cash collateral. The post-petition cash collateral cash collateral agreement that provides for the payment of the Employee Obligations as defined herein.

## RELIEF REQUESTED

9. A substantial percentage of Debtor's Employees are compensated at a modest level and the great hardship imposed on these workers if they were to lose (or suffer delay in receiving) their pay would adversely affect morale and subsequent operation of the Debtor's business. Moreover, the commissioned sales representative has unpaid commissions due for pre-petition services and the Debtor constitutes more than 75% of the commissions eared by the sales rep. The Debtor's ability to preserve its business and assets and to reorganize will be adversely affected if it is unable to retain its dedicated and loyal Employees. Moreover, Debtor's Employees are skilled in the underground infrastructure inspection, repair and rehabilitation and are familiar with the Debtor's customer base and practices. Debtor will not be able to quickly replace its skilled employees if any of its Employees were to seek other employment. Consequently, any loss of its Employees would result in a disruption of its operations and would have a negative impact on its relationship with its patients and impede its cash flow. Accordingly, to enable the Debtor to minimize hardships suffered by its Employees as a consequence of this Chapter 11 filing and to maintain morale, it is essential for the Debtor to be authorized to make the payments and maintain the employee programs and policies described herein.

10. Certain obligations to Employees for wages, salaries, commissions, reimbursable expenses, various medical and workers' compensation benefits obligations earned and incurred before the Chapter 11 petition was filed (i) were paid by checks that may be dishonored because of the Chapter 11 filing, (ii) are due, but have not been paid; or (iii) will be due after the Petition Date, and Debtor may be in arrears to certain third-party administrators of the Debtor's benefit programs.

11. Amounts due to the sales representative may also be due in connection with commissions earned and incurred before the Chapter 11 petition was filed (i) were paid by checks that may be dishonored because of the Chapter 11 filing, (ii) are due, but have not been paid; or (iii) will be due after the Petition Date.

12. To minimize the personal hardship those Employees and the commissioned sales representative will suffer if pre-petition employee-related obligations and commissions are not paid when due, and to maintain Employees' and sales representative's morale and production at this critical time, the Debtor, by this Motion, seeks authority to pay pre-petition claims for wages, salaries, commissions and other compensation, vacation, jury duty and other paid leave, federal and state withholding taxes, payroll taxes, contributions to retirement plans and all other employee benefits and commissions which the Debtor pays in the ordinary course of business (collectively, the "Employee Obligations") as well as Reimbursable Expenses (as that term is described herein).

## DEBTOR'S EMPLOYEE OBLIGATIONS

A. <u>Unpaid Compensation</u>.

13. In the ordinary course of its business, the Debtor issues payroll checks on a weekly basis for its 23 field Employees the (the "Field Employees"). The Field Employees' wages are paid seven (7) days in arrears. The aggregate gross weekly payroll due to the Field Employees is approximately $15,000.

14. In addition, the Debtor issues payroll checks to nine (9) management, administrative and office Employees (the "Management/Administrative Employees") on a bi-weekly basis. The Management/Administrative Employees' wages are also paid seven (7) days in arrears. The aggregate gross bi-weekly payroll due to the Management/Administrative Employees is approximately $20,000.

15. The Debtor estimates that, as of the Petition Date, one prepetition payroll will be due to its Field Employees in the amount of approximately $15,000 and one prepetition payroll will be due to its Management/Administrative Employees in the approximate amount of $20,000 for a total in accrued pre-petition wages, salaries, overtime, jury, holiday and/or vacation pay which may have accrued during the most recent pay period, and other compensation (excluding vacation and severance pay) earned prior to the Petition Date was unpaid (collectively, the "Unpaid Compensation") in the approximate amount of $35,000.

16. In addition, the Debtor pays commissions to a commissioned sales representative who assists with the preparation of bids and quotes for new projects.

17. Items of Unpaid Compensation were due and owing on the Petition Date because, *inter alia*:

a. The Chapter 11 petition was filed during the Debtor's regular and customary salary and hourly wage payroll periods;

b. Some payroll checks issued to Employees prior to the Petition Date may not have been presented for payment or cleared the banking system and, accordingly, have not been honored and paid as of the Petition Date; and

c. On May 4, 2018, Debtor's Field Employees will be entitled to payroll for the period April 23, 2018 through April 29, 2018 and Debtor's Management/Administrative Employees will be entitled to payroll for the period April 16, 2018 through April 29, 2018.

d. In addition, some of the Employees may, on the Petition Date, have outstanding unreimbursed business expenses for Pre-Petition expenses.

18. The request to pay Unpaid Compensation relates solely to Employees employed as of the Petition Date.

B. <u>Paid Vacation</u>.

19. The Debtor also provides its Employees with paid vacation that is accrued pro rata throughout the calendar year. The Employees are paid for such vacation days and are not entitled to payment for unused vacation days upon termination of employment. As of the Petition Date, most Employees have accrued unused vacation days. Vacation days are paid with the regular payroll as they are used.

20. The Debtor requests that all Employees be authorized to use and be compensated for such accrued vacation days in the ordinary course of the Debtor's business.

C. *Pre-Petition Deductions Withheld From Employee Paychecks and Related Reductions and Payments*.

21. The Debtor deducts from its Employees' paychecks (a) payroll taxes and the employees' portion of FICA and unemployment taxes; (b) legally ordered deductions such as wage garnishments, child support and tax levies; (c) voluntary contributions for health coverage and charitable and/or political organizations (the "Employee Deductions"). The Debtor forwards amounts equal to the Employee Deductions to appropriate third-party recipients. The Debtor is responsible for fifty percent (50%) of the Employee health and dental insurance premiums. Due to the commencement of these Chapter 11 cases, funds representing the Employee Deductions have been deducted from Employee paychecks but may not have been forwarded to the appropriate third-party recipients. In addition, Employee Deductions may be deducted from the pre-petition payroll that is paid post-petition. By this Motion, the Debtor seeks authority to forward any and all Employee Deductions and any related direct insurance and tax obligations of the Debtor to the appropriate parties in the ordinary course without regard to whether they were deducted pre- or post-petition.

22. As of the Petition Date, the Debtor is current on its obligations in connection with the Employee dental insurance provided through Principal Financial Services, Inc. On the Petition Date, the Debtor was past due in the approximate amount of $22,000 on its payments to Health Alliance Plan in connection with the Employee health insurance.

D. *Workers' Compensation*.

23. Prior to the commencement of this Chapter 11 case, the Debtor was premium-based insured in Michigan for workers' compensation liability insurance.

24. In order to continue to employ individuals and continue to operate its business, the Debtor is required under applicable state law to maintain workers' compensation insurance and continue to honor workers' compensation claims, whether pre- or post-petition. If the Debtor is unable to continue to honor workers' compensation claims, state insurance authorities will suspend its ability to conduct business.

25. The Debtor seeks authorization to maintain existing workers' compensation programs without interruption and to pay pre- and post-petition workers' compensation insurance premiums.

E. <u>Reimbursable Business Expenses</u>.

26. Prior to Petition Date and in the ordinary course of its business, the Debtor reimbursed Employees for certain expenses incurred in the scope of their employment. As of Petition Date, the Debtor believes there are outstanding reimbursable expenses due to the Employees, relating to, *inter alia*, business related travel expenses, business meals, relocation allowances, phone costs, car expenses, mileage reimbursements, purchases of equipment and supplies and miscellaneous business expenses (collectively, "Reimbursable Expenses"), incurred on its behalf and with the understanding that they would be reimbursed, the Debtor seeks authority to pay such expenses. Accordingly, to avoid harm to such individuals, the Debtor seeks to be authorized, but not required, to pay the pre-petition Reimbursable Expenses in the ordinary course of business.

**THE RELIEF REQUESTED IS IN THE BEST INTEREST
OF DEBTOR, ITS ESTATE AND ITS CREDITORS**

27. The Debtor is an employer with loyal and dedicated Employees whose future, in large measure, depends upon the success of this Chapter 11. It is essential to the continued

operation of the Debtor's business and its efforts to reorganize that the services of Employees be retained, that the morale of such persons be maintained, and that its estate not be exposed to unnecessary and unwarranted risks. If it is not permitted to pay Employee Obligations, both the Debtor and Employees will incur severe economic hardship, and unwarranted risks. Moreover, interruption in payment of the Employee Obligations could disrupt production, and ultimately, cause the Debtor to cease operating without completing the projects it has been awarded, and thereby, result in a loss of going concern value for the Debtor's estate and its creditors.

28. As a result of this Chapter 11 filing, the Debtor is prohibited from paying claims that arose before Petition Date unless it receives specific Court authorization. However, pursuant to Section 507(a) (3) (A) of the Code, the Debtor's Employees' claims for wages, and salaries, including vacation leave pay and sales commissions earned within ninety (90) days before Petition Date are afforded priority status to the extent of $12,475.00 per Employee. Also, Section 507(a)(4) of the Code affords priority status to contribution obligations to employee benefit plans earned within ninety (90) days before the Petition Date to the extent of $12,850.00 per Employee. None of the Employees nor the sales representative will be paid more than the allowed amounts as Compensation and Benefits or commissions under this Order and no employee nor the sales representative will receive more than $12,850.00 in total pre-petition compensation.

29. Section 105(a) of the Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

30. The relief requested is supported by the well-established "necessity of payment" doctrine.[1] Under that rule, a bankruptcy court will permit a reorganizing debtor to make post-bankruptcy payments on pre-bankruptcy claims when payment is necessary to effectuate a successful reorganization. *See also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (necessity of payment doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during the reorganization, payment may be authorized even if it is made out of corpus").

31. In *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y 1989), the court permitted Eastern Air Lines, Inc. to pay its current employees' pre-bankruptcy wages, salaries, medical benefits and business expense claims. The Court relied on its equitable powers under Section 105(a) of the Code to effectuate a restructuring of the debtor's finances to provide jobs for its employees. *Id.* at 177 (citing H.R. Rep. No. 595 95th Cong. 1st Sess. 16 (1977)). *See also In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987) (approving bankruptcy court order authorizing debtor to pay certain pre-bankruptcy wages, salaries, employee reimbursement expenses and benefits, including payments on workers' compensation claims). Specifically, Judge Lifland held that such payments to Eastern's current employees fell under the "necessity of payment" rule, first enunciated by the Supreme Court in *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882).

32. Such payments should be permitted in the instant case in view of the Debtor's "ability to pay the claims without disturbing the *pro rata* distribution to other creditors with similar or the same legal rights against the estate." Epling, *Preconfirmation or Preclosing*

*Payment of Pre-petition Claims in Bankruptcy*, 94 Comm. L.J. 187, 188 (1989); *see, e.g., Ionosphere Clubs*, 98 B.R. at 178-79 (permitting payment of pre-petition claims for employees working post-petition, without payment of identical claims of employees not currently working for airline); *Chateaugay*, 80 B.R. at 283-84 (employer permitted to pay pre-petition employee benefit claims for certain employees, without paying identical claims for other employees); Ordin, *Finality of Order of Bankruptcy Court*, 54 Am. Bankr. L.J. 173, 177 (1980) (when "confronted with special circumstances…particularly in the early stages of the case, a court may authorize the payment of pre-petition debts in order to preserve the potential for rehabilitation").

33. Accordingly, the "necessity of payment" doctrine authorizes the Debtor to pay the amounts it seeks to pay pursuant to this Motion. The Debtor seeks to pay Employee Obligations in accordance with the policies, plans, and programs that were in place prior to the Petition Date.

34. The Debtor believes that the majority, is not all, of the amounts it seeks to pay is entitled to priority claim status under Sections 507(a)(3) and 507(a)(4) of the Bankruptcy Code. As such, the Debtor will be required to pay all Employees' priority claims in full in order to confirm a plan. *See*, 11 U.S.C. § 1129(a)(9)(B). The Debtor believes that there are no Unpaid Compensation amounts relating to any one Employee in excess of $12,475. Thus, granting the relief sought herein would affect only the timing, and not the amount, of payment of the Employee Obligations and Reimbursable Expense to the extent they constitute priority claims. Many Employees live from paycheck to paycheck and rely exclusively on receiving their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses. These Employees and sales representative will be exposed to significant financial and health related problems if the Debtor is not permitted to pay certain of the unpaid Reimbursable

Expenses and Employee Obligations and sales commissions, particularly wages, salaries and commissions. Moreover, Advanced Underground believes that if it is unable to honor its Employee Obligations, employee morale and loyalty will be jeopardized at a time when employee support is critical. In addition, the Debtor may lose sales if it is not able to continue utilizing the services of its sales representative. The Debtor believes such uncertainty will cause significant anxiety at precisely the time that it needs its Employees and sales representative to perform their jobs at peak efficiency.

35. The Employee Obligations and Reimbursable Expense principally represents employee earnings which employees or, in the case of garnishments, judicial authorities, have designated for deduction from employee paychecks and paid accordingly. The failure to pay these benefits could result in hardship to certain employees. The Debtor expects inquiries from garnishors regarding its failure to submit, among other things, child support and alimony payments which are not the Debtor's property, but rather have been withheld from employee paychecks. Moreover, if Debtor cannot remit these amounts, the Debtor and Debtor's Employees may face legal action due to the failure to submit these payments. The Employees are essential assets; they are critical to any successful reorganization. Deterioration in employee morale and welfare at this critical time undoubtedly would adversely impact the Debtor, the value of its assets and business, and ultimately, its ability to reorganize. Furthermore, the failure of the Debtor to successfully reorganize.

36. The "fundamental purpose of reorganization is to prevent the Debtor from going into liquidation, with an attendant loss of jobs." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984). Payment of the amounts requested in this Motion pursuant to the "necessity of payment"

doctrine is in the interest of all parties because such payment will facilitate the continued operation of the Debtor's business. *See Lehigh and New England Rv. Co.*, 657 F.2d at 581. Accordingly, the relief sought by this Motion will allow the Debtor to continue to operate with minimal disruption and enable the Debtor to stabilize its business and to seek additional and new contracts.

**REQUEST FOR AUTHORITY FOR BANKS AND
OTHER FINANCIAL INSTITUTIONS TO HONOR CHECKS ISSUED
TO PAY EMPLOYEE OBLIGATIONS, REIMBURSABLE EXPENSES
AND RETIREMENT HEALTH BENEFITS AND TO HONOR ALL
<u>FUNDS TRANSFER REQUESTS RELATING TO FOREGOING</u>**

37. The Debtor requests that all applicable banks and other financial institutions be authorized and directed to receive, process, honor and pay all checks presented for payment and to honor all funds transfer requests, such as direct deposit, made by the Debtor related to Employee Obligations, Reimbursable Expenses and sales commissions, whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date. The Debtor represents that these checks are identifiable as payroll or commissions and are drawn on the Debtor's disbursement account. Accordingly, checks other than those for Employee Obligations, Reimbursable Expenses and commissions will not be honored inadvertently. Moreover, the Debtor represents that it has sufficient cash reserves to pay promptly all Employee Obligations, Reimbursable Expenses and commissions to the extent described herein, on an ongoing basis and in the ordinary course of its business. Nothing contained in this Motion shall constitute a request for authority to assume any agreements, policies or procedures relating to Employee Obligations, Reimbursable Expenses or sales commissions.

*S&B\85323\001\MOTBRF\SB638823.DOC        13

18-46416-tjt   Doc 5   Filed 05/01/18   Entered 05/01/18 16:27:58   Page 13 of 17

## NOTICE

38. No trustee, examiner, or creditors' committee has been appointed in these Chapter 11 cases.

39. A complete copy of this Motion has been served by facsimile, email or overnight mail service on: (a) the United States Trustee; (b) the twenty largest unsecured creditors; (c) counsel for the Internal Revenue Service; (d) counsel for the State of Michigan, Department of Treasury; (e) counsel for Huntington Bank; and (f) counsel for Commercial Credit Group, Inc. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

## WAIVER OF MEMORANDUM OF LAW REQUESTED

40. As this motion raises no novel issues of factor or law, and the legal basis relied upon by the Debtor has been adequately set forth herein, the Debtor requests that the requirement of a separate memorandum of law be waived.

## NO PRIOR REQUEST

41. No prior motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, Advanced Underground Inspection, Inc. moves for (i) authorization to pay any and all Employee Obligations that are accrued and unpaid as of the commencement of this Chapter 11 case, (ii) authorization for and direction to its banks, to honor all checks issued, and fund transfers requested, in respect of the Employee Obligations and/or sales commissions, (iii) authorization to issue new checks and make funds transfer requests to meet the Employee Obligations and/or sales commissions; and (iv) the granting of such other and

further relief as is just and proper, all substantially in accordance with the proposed order attached hereto as Exhibit A.

Respectfully submitted,

**STROBL & SHARP, P.C.**


    */s/ Lynn M. Brimer*
LYNN M. BRIMER (P43291)
PAMELA S. RITTER (P47886)
Strobl & Sharp, P.C.
300 E. Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
(248) 540-2300; fax (248) 645-2690
Email: lbrimer@stroblpc.com
pritter@stroblpc.com
Proposed Attorneys for Debtor and Debtor in Possession

Date: May 1, 2018

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

In Re:

| | |
|---|---|
| ADVANCED UNDERGROUND INSPECTION, LLC, | Case No.<br>Chapter 11<br>Hon. |
| Debtor. | |

**FIRST DAY ORDER AUTHORIZING DEBTOR (A) TO PAY
PRE-PETITION WAGES, SALARIES, BENEFITS, AND REIMBURSABLE
EXPENSES, AND TO CONTINUE EXISTING EMPLOYEE POLICIES, AND (B) TO
CONTINUE IN EFFECT WORKERS' COMPENSATION PROGRAMS**

Advanced Underground Inspection, LLC ("Advanced Underground" or the "Debtor"), as a Debtor and Debtor in Possession in the above-captioned Chapter 11 case, filed a Motion Seeking Entry of an Order Authorizing Debtor (A) to Pay Pre-petition Wages, Salaries, and Reimbursable Expenses, and to Continue Existing Employee Policies, (B) to Continue In Effect Worker's Compensation Programs (the "Motion"); and the Debtor agreeing that the amounts it seeks to pay are entitled to priority claim status under Sections 507(a)(3) and 507(a)(4) of the Bankruptcy Code. This Court, after considering the record herein and hearing the argument of counsel, and notice being adequate and sufficient under the circumstances; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtor, its creditors, and all parties in interest; and the Court having heard the evidence and statements of counsel regarding the Motion and having determined that the legal and factual bases set forth in the Motion establishes just cause for the relief granted herein;

**THEREFORE, IT IS ORDERED:**

1. The Motion is **GRANTED**.

2. Advanced Underground is authorized to pay any and all Employee Obligations, Reimbursable Expenses and sales commissions, as defined in the Motion, which are accrued and unpaid as of the commencement of the Debtor's Chapter 11 case; provided, however, that the Debtor may not pay an individual employee or its sales representative more than $12,850.00 under this Order.

3. The maximum the Debtor is authorized to use from its cash collateral to satisfy its gross wages and associated liabilities for the pay period ending April 29, 2018, is $45,000.00.

4. The maximum the Debtor is authorized to use from its cash collateral to satisfy its unpaid pre-petition sales commissions is $12,850.

5. The Debtor is authorized to direct its banks to honor all checks issued and funds transfer requests with respect to Employee Obligations, as defined in the Motion.

6. The Debtor is authorized to issue new checks and make funds transfer requests to meet the Employee Obligations, as defined in the Motion.